UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JARED B. ADAMS,[1]

      Plaintiff,

v.                             CASE No. 8:11-CV-2312-T-TGW

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.

_____

## O R D E R

The plaintiff in this case seeks judicial review of the denial of his claim for Social Security disability benefits.[2] Because the decision of the Commissioner of Social Security is supported by substantial evidence and the plaintiff has not shown any reversible error, the decision will be affirmed.

---

[1]The complaint was filed with the plaintiff's name as "Jared B. Adams" (Doc. 1). However, the application for benefits spelled his name as "Jered B. Adams" (Tr. 114), and that is the way plaintiff's counsel spelled his name in his memorandum (Doc. 16).

[2]The parties have consented in this case to the exercise of jurisdiction by a United States Magistrate Judge (Doc. 15).

I.

The plaintiff, who was twenty-eight years old at the time his insured status expired and who has a high school education, has worked as an aircraft maintenance mechanic and supervisor, and a fuel dispatcher (Tr. 32, 33, 51, 138). He filed a claim for Social Security disability benefits, alleging that he became disabled on May 1, 2006, due to hip, back, and neck problems; migraine headaches; depression; tinnitus; and cholesterol problems (Tr. 137). The claim was denied initially and upon reconsideration.

The plaintiff, at his request, then received a de novo hearing before an administrative law judge. The law judge found that, as of the date last insured of December 31, 2007, the plaintiff had severe impairments of "history of mild multilevel cervical spondylosis with mild foramina narrowing of the cervical spine with no evidence of disc herniation or stenosis; minimal bulging of the T8-9 disc with no evidence of herniation or central stenosis and mild facet degenerative changes of the L5-S1 levels, obesity, and carpal tunnel syndrome bilaterally" (Tr. 16). The law judge also considered the plaintiff's sleep apnea, migraine headaches, dysthymic and personality disorders, and depressive disorder, but found that these conditions

were not severe because they did not significantly limit the plaintiff's ability

to do basic work related activities (id.).

The law judge concluded that, through December 31, 2007, the

date last insured, the plaintiff's impairments restricted the plaintiff to less

than the full range of light work as follows (Tr. 19):

> [T]he claimant was able to lift and carry twenty
> pounds occasionally and ten pounds frequently.
> He could stand and/or walk for six hours in an
> eight-hour workday with normal breaks.   The
> claimant could sit for six hours in an eight-hour
> workday. He could occasionally balance, kneel,
> crouch, crawl, squat and climb ropes, ladders,
> scaffolds, ramps and stairs.   He was limited to
> frequently handling and fingering (gross and fine
> manipulations) bilaterally.

The law judge determined, based upon the testimony of a vocational expert,

that, notwithstanding the plaintiff's limitations, he could return to prior work

as a supervisor of aircraft maintenance (Tr. 22).  Alternatively, the law judge

found that there were other jobs in significant numbers in the national

economy that the plaintiff could perform, such as customer security clerk,

office helper, and sales attendant (Tr. 22-23).   Therefore, the law judge

decided that, through the date last insured, the plaintiff was not disabled (Tr.

23). The Appeals Council let the decision of the law judge stand as the final

decision of the defendant.

II.

In order to be entitled to Social Security disability benefits, a claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. 423(d)(1)(A).  A "physical or mental impairment," under the terms of the Social Security Act, is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. 423(d)(3). In this case, the plaintiff must show that he became disabled before his insured status expired on December 31, 2007, in order to receive disability benefits (Tr. 133).  42 U.S.C. 423(c)(1); Demandre v. Califano, 591 F.2d 1088, 1090 (5th Cir. 1979), cert. denied, 444 U.S. 952. Also, the Act provides further that a claimant is not disabled if he is capable of performing his previous work. 42 U.S.C. 423(d)(2)(A).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence.  42 U.S.C. 405(g). Substantial evidence is "such relevant evidence as a reasonable mind

might accept as adequate to support a conclusion." <u>Richardson</u> v. <u>Perales</u>, 402 U.S. 389, 401 (1971), <u>quoting</u> <u>Consolidated Edison Co.</u> v. <u>NLRB</u>, 305 U.S. 197, 229 (1938).  Under the substantial evidence test, "findings of fact made by administrative agencies ... may be reversed ... only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." <u>Adefemi</u> v. <u>Ashcroft</u>, 386 F.3d 1022, 1027 (11th Cir. 2004)(<u>en banc</u>), <u>cert.</u> <u>denied</u>, 544 U.S. 1035 (2005).

It is, moreover, the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses.  <u>Grant</u> v. <u>Richardson</u>, 445 F.2d 656 (5th Cir. 1971).  Similarly, it is the responsibility of the Commissioner to draw inferences from the evidence, and those inferences are not to be overturned if they are supported by substantial evidence.  <u>Celebrezze</u> v. <u>O'Brient</u>, 323 F.2d 989, 990 (5th Cir. 1963).

Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the court is not to reweigh the evidence, but is limited to determining whether the record as a whole contains sufficient

evidence to permit a reasonable mind to conclude that the claimant is not disabled. However, the court, in its review, must satisfy itself that the proper legal standards were applied and legal requirements were met. <u>Lamb</u> v. <u>Bowen</u>, 847 F.2d 698, 701 (11th Cir. 1988).

## III.

The plaintiff challenges on four grounds the decision of the Commissioner (Doc. 16). Notably, the plaintiff must show that he was disabled between May 1, 2006, the alleged disability onset date, and December 31, 2007, the date the plaintiff was last insured for disability benefits. The medical evidence in this case is not particularly voluminous, and much of it relates to a period after the date last insured. Especially in light of these circumstances, none of the plaintiff's contentions is meritorious.

A. The plaintiff argues that the law judge erred in finding that his migraine headaches and psychological disorders were non-severe impairments (<u>id</u>., pp. 6-7). However, the law judge gave reasonable explanations for discounting the plaintiff's claims of migraine headaches and a severe psychological disorder. Those explanations are supported by substantial evidence.

The regulations define a non-severe impairment as one that "does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. 404.1521(a). The law judge acknowledged this standard in his decision (Tr. 15) and applied it with regard to the plaintiff's migraine headaches and psychological disorders (see Tr. 16).

The plaintiff argues that the law judge erred by finding his headaches were not severe (Doc. 16, p. 6). The law judge acknowledged that the plaintiff reported a history of migraine headaches to physicians and was prescribed medication and Botox injections to treat them (Tr. 16). The law judge also discussed the plaintiff's hearing testimony that he had migraine headaches twice a week which caused him to vomit (Tr. 19).

The law judge expressly rejected the plaintiff's contention that his alleged migraine headaches were severe (Tr. 16). In this regard, the law judge explained that "[n]o doctor has assessed the claimant is disabled due to migraine headaches ... or classified th[is] condition[] as severe" and the medical records reflect that "his headaches have been generally controlled with medications and Botox injections" (id.). This explanation is sufficient to reject the plaintiff's contention of severe migraine headaches.

Furthermore, it is supported by substantial evidence. As the law judge explained, no physician placed any functional limitations on the plaintiff due to migraine headaches. Also, the medical record does not contain any significant findings regarding the plaintiff's headaches. Thus, the treatment records in this regard consist primarily of cursory notations of the plaintiff's self-reports of headaches and prescriptions for medication and Botox injections (see, e.g.,Tr. 237-39, 243-45, 249). There is no objective testing or findings on physical examinations which substantiate the alleged severity of the plaintiff's headaches.

Moreover, despite the plaintiff's allegations of disabling migraine headaches throughout the insured period, the record contains no

in June 2007 that he was "very happy" with the Botox treatment and in November 2007 that the "fioricet [headache medication] is working well"(Tr. 237, 243). Furthermore, during an appointment with Dr. Frederick in April 2008, the plaintiff again reported "doing well" (except for unrelated hand numbness) (Tr. 213). Consequently, Dr. Frederick directed that the current headache treatment be continued (see Tr. 215).

In support of the contention that his headaches were severe, the plaintiff argues that his treatment provided neither "measurable" nor "sustained" relief (see Doc. 16, p. 6). However, the plaintiff's treating physician consistently stated, based on the plaintiff's reports, that the plaintiff's headaches were "very much improved" with Botox injections and medication (Tr. 215, 239, 245). Further, the plaintiff's contention that "[t]he headaches were amenable to botox injections for a short period of time in late spring 2007, but as of November 2007, frequency and intensity had returned as the claimant stated subsequent shots had not been effective" (Doc. 16, p. 6) is misleading. Thus, the plaintiff did not report to his physician in November 2007 that the frequency and intensity of his headaches had returned; to the contrary, the plaintiff told Dr. Frederick that he was "doing

well" and that "the fioricet is working well for him" (Tr. 237). Furthermore, the contention that Botox shots subsequent to Spring 2007 had not been effective is baseless, since the plaintiff did not have any Botox shots between his Spring 2007 and his November 2007 appointment (see Tr. 357).

In support of this contention, the plaintiff also cites to his hearing testimony and a subjective complaint of migraine headaches to his physician (Doc. 16, p. 6). However, as discussed infra, the law judge reasonably rejected his subjective complaints to the extent they exceeded the residual functional capacity (Tr. 20). Therefore, the plaintiff's discredited subjective allegations of pain and functional limitations do not support his assertion that his headaches were a severe impairment.

In sum, the law judge's finding that the migraine headaches were non-severe is reasonable and supported by substantial evidence. The plaintiff has not identified any credited evidence which compels a contrary conclusion. See Adefemi v. Ashcroft, supra.

The plaintiff also seems to contend that the law judge erred in finding that his psychological problems were not a severe impairment. However, the plaintiff does not develop any meaningful argument on this

contention. The scheduling Order requires that the plaintiff "must identify with particularity the discrete grounds upon which the administrative decision is being challenged" and must support those challenges "by citations to the record of the pertinent facts" (Doc. 13, p. 2). These requirements were not satisfied because not only was a challenge to the finding of a non-severe psychological impairment not particularized, more significantly, there was no citation to the record in support of such a challenge. Consequently, any contention that the law judge erred in that respect is deemed abandoned.

In any event, such a contention lacks merit. The law judge considered the allegation of a psychological impairment, and reasonably found that it was non-severe.

Specifically, the law judge stated that the plaintiff had been diagnosed with dysthymic and personality disorders and a depressive disorder (Tr. 16). The law judge also recounted the plaintiff's testimony that he had mood swings and did not want to be around people (Tr. 20). However, the law judge found that the medical record and the plaintiff's daily activities did not show that the plaintiff's psychological disorders significantly limited his ability to perform basic work related activities (Tr. 16-18).

This finding is amply supported by the record. Thus, the law judge pointed out that, during the insured period, the plaintiff had not required any psychiatric hospitalizations or intervention, he was not regularly seeing a mental health specialist, and obtained psychiatric medication from his primary physician (Tr. 18). Further, when the plaintiff did meet with a psychiatrist, his mental status was opined to be "within normal limits." (Tr. 242). Thus, in July 2007 (two years after his last psychiatric appointment), the plaintiff was evaluated by psychiatrist Dr. Edgar Bueno, who opined that the plaintiff was "doing well" as far as his psychiatric condition and did not need any intervention (Tr. 241-42). Notably, Dr. Bueno assigned the plaintiff a Global Assessment of Functioning of 70, which is at the top of the range of only mild symptoms in psychological, social, and occupational functioning, and borders on only transient and expectable reactions to psychosocial stressors. See Diagnostic and Statistical Manual of Mental Disorders, 4th Ed. Rev. (DSM-IV-TR) (Tr. 17-18, 242). Furthermore, Dr. Bueno stated in treatment notes from an April 2008 appointment that, since July 2007, the plaintiff "ha[d] gotten along well from the psychiatric point of view" and his "psychiatric condition was considered under control," despite the plaintiff's

decision in December 2007 to stop taking his psychiatric medication (Tr. 224). Dr. Bueno, moreover, did not identify any functional limitations due to a psychiatric disorder. The law judge appropriately gave significant weight to Dr. Bueno's opinions (Tr. 18).

Additionally, two non-examining reviewing psychologists opined that the plaintiff did not suffer from a severe mental impairment during the insured period (Tr. 265-77, 364-76). The law judge gave significant weight to these opinions as well (Tr. 18). The law judge also stated that the plaintiff's daily activities were inconsistent with more than mild mental functional limitations (id.). In sum, the law judge gave ample reasons, supported by substantial evidence, for finding that the plaintiff did not have a severe mental impairment during the insured period.

The plaintiff does not undermine any of the reasons given by the law judge for finding the psychological disorders to be non-severe, or identify any credited evidence which would compel the law judge to find that he had a severe psychological disorder (see Doc. 16, p. 6). See Adefemi v. Ashcroft, supra. Indeed, as noted, the plaintiff has not articulated any meaningful argument on this issue at all. Therefore, the plaintiff's assertion that the law

judge erred in finding the plaintiff's psychological disorders were non-severe is baseless.

     B.  In addition, the plaintiff contends that the law judge failed to assess the vocational expert's testimony that the plaintiff could not be gainfully employed if he had two unexcused work absences monthly (Tr. 51-54).  The law judge apparently gave no weight to this testimony because its underlying premise–that the plaintiff would have had two unexcused absences per month–was implicitly rejected by the law judge, as the residual functional capacity contains no such limitation (Tr. 19).  Notably, it was the law judge who asked a hypothetical question that included a limitation of two absences per month (Tr. 53).  This was in addition to a hypothetical question that matched the law judge's determination of the plaintiff's residual functional capacity (Tr. 51-52).  Since the law judge did not include two absences per month in his residual functional capacity determination, he obviously disregarded his hypothetical question including such a limitation as not relevant.  The law judge is not required to include restrictions in the hypothetical question that he properly finds are unsupported.  Crawford v. Commissioner of Social Security, 363 F.3d 1155, 1161 (11th Cir. 2004).

The plaintiff argues that the evidence of record supports his contention that he would have had two unexcused absences monthly (Doc. 16, p. 3). Significantly, no physician has opined that the plaintiff would miss two, or even one, workday per month due to any impairment. Nonetheless, the plaintiff contends that his migraine headaches and back pain substantiate such a limitation (id., pp. 3-4). As discussed above, the law judge gave an adequate explanation, supported by substantial evidence, for finding that the plaintiff's headaches were not a severe impairment. That explanation also suffices for rejecting the contention that the plaintiff's migraine headaches would have caused two unexcused work absences monthly.

The plaintiff argues, in particular, that he reported to his physician in June 2007 that he had migraine headaches once a week, and that "migraines occurring once-a-week would substantiate two unexcused absences per month" (id., p. 3). However, the law judge is not required to credit this subjective complaint because, as explained below, the law judge did not find the plaintiff fully credible. Furthermore, the plaintiff's memorandum does not accurately state what he told Dr. Frederick at that June 2007 appointment. Thus, the record reflects that the plaintiff told Dr.

Frederick that he had headaches "maybe" once a week, without any indication of their duration or severity (see Tr. 243). Therefore, even if the plaintiff's June 2007 complaint to Dr. Frederick is credited, it does not show that his headaches would interfere with work at all.

The plaintiff also makes cursory references to back and leg pain (Doc. 16, pp. 3, 4). However, there is no record evidence compelling the law judge to find that these problems would have caused the plaintiff to miss two days of work each month. Thus, the law judge included limitations in the residual functional capacity due to pain and spasms, but there is no medical evidence supporting a greater limitation. As the law judge discussed, physical examinations of the plaintiff were essentially within normal limits, and the plaintiff was not observed to be in acute distress (Tr. 20). Furthermore, objective testing showed only "mild" and "minimal" abnormalities and degenerative changes in the plaintiff's thoracic and lumbar spine (Tr. 225-26, 231-32).

In sum, the plaintiff has not shown that the law judge was compelled to find that the plaintiff would have had two unexcused absences monthly during the insured period. Therefore, the law judge did not err in

discarding the vocational expert's testimony that the plaintiff could not be gainfully employed if he had two unexcused work absences monthly.

C.   The plaintiff also argues that the law judge erroneously discounted his credibility (Doc. 16, pp. 7-10). This contention also lacks merit, as the law judge gave a reasonable explanation, supported by substantial evidence, for finding the plaintiff only partially credible.

The plaintiff testified at the hearing that he has lower back pain, weakness in the left leg, and shooting pains from his left hip and groin that "drop [him] to [his] knees" (Tr. 35-37). He stated that he sleeps only four to five hours each night due to pain, and that he has ground all of his teeth flat from pain (Tr. 44). Moreover, the plaintiff reported that he is "always in pain" and "always depress[ed]" (Tr. 137).

The plaintiff testified that, due to his impairments, he can only walk 75 yards (while wearing a back brace), stand 10 minutes, and sit 30 minutes at a time (Tr. 38). He stated further that he cannot bend at the waist without pain (Tr. 43). He also testified that he gets migraine headaches twice a week, which last from 12 hours to all day, and are so severe that they cause

him to vomit (Tr. 36, 45). Moreover, the plaintiff testified that, due to depression, he has mood swings and that he "can't stand people" (Tr. 48).

The Eleventh Circuit has established a standard for evaluating complaints of pain and other subjective complaints. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). As the court of appeals explained in Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986), the pain standard "required evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." If the law judge determines that, under this test, there is objectively determined medical evidence of an impairment which could reasonably be expected to produce disabling pain, the law judge "must evaluate the credibility of claimant's testimony as to pain, and must express a reasonable basis for rejecting such testimony." Hand v. Heckler, 761 F.2d 1545, 1549 n.6 (11th Cir. 1985).

The law judge properly applied the Eleventh Circuit's pain standard. The law judge recognized the need to articulate a credibility

determination, and he referred to the pertinent regulations and Social Security rulings (Tr. 19). Moreover, he set forth the two-step analysis that those rules require (id.).  This demonstrates that the law judge employed the proper standards.  See Wilson v. Barnhart, 284 F.3d 1219, 1225-26 (11th Cir. 2002).

The law judge, moreover, evaluated the evidence and set forth his reasons for discounting partially the plaintiff's subjective allegations (Tr. 16-22). Notably, the law judge did not totally reject the plaintiff's subjective complaints, but rather concluded that the plaintiff had severe impairments that restricted him to a reduced range of light work (Tr. 19, 22). The law judge rejected only the allegations of total disability (id.).

The law judge stated (Tr. 20):

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

The law judge, in addition, provided adequate reasons for his credibility determination.  Thus, the law judge explained that the objective medical evidence and the plaintiff's good daily activities were inconsistent

with the plaintiff's allegations of disabling pain and functional limitations (see Tr. 16-18, 20-21). The law judge also gave examples of the plaintiff's inconsistent statements which further undermine the plaintiff's credibility (Tr. 21). These reasons are sufficient to discount the plaintiff's complaints of incapacitating impairments and pain. See Heppell-Libsansky v. Commissioner of Social Security, 170 Fed. Appx. 693, 699 (11th Cir. 2006); 20 C.F.R. 404.1529(c)(4).

Furthermore, the law judge's reasoning is supported by substantial evidence. Thus, as the law judge recounted in the decision, "physical examinations [of the plaintiff] revealed no acute distress" and "were essentially within normal limits" (Tr. 20; see Tr. 239, 244). Additionally, objective testing revealed only "mild" or "minimal" degenerative changes and abnormalities in the plaintiff's lumbar and thoracic spine (see Tr. 20, 21, 225, 226, 231-32). Moreover, the plaintiff does not cite to any physician's opinion indicating that the plaintiff had functional limitations due to an impairment. See Longworth v. Commissioner Social Security Admin., 402 F.3d 591, 596 (6th Cir. 2005)("a lack of physical restrictions constitutes substantial evidence for a finding of non-disability"). To the contrary, Dr. Frederick encouraged daily exercise (Tr. 240, 245).

Similarly, as discussed above, the law judge gave a comprehensive explanation for finding that the plaintiff's subjective complaints of disabling mental impairments were inconsistent with the medical record.

The law judge also pointed out that the plaintiff's "good daily activities" were inconsistent with his testimony of disabling limitations and pain (Tr. 18, 22). Thus, the plaintiff testified that he prepares simple meals, drives a car, grocery shops, does light household cleaning, and cares for his personal needs (Tr. 40-42). The plaintiff added that he spends the day reading, using the computer, and doing "odds and ends" (Tr. 39, 48). He also occasionally attends church, and does some fishing and hunting (Tr. 39-40). Significantly, despite the plaintiff's allegations of disabling pain and functional limitations, he told his psychiatrist just two months after his date last insured that he was the "house maker" of the household and was "the one taking care of his 8 month[] child" (Tr. 224). Thus, the law judge could reasonably conclude that the plaintiff's testimony of constant pain and disabling limitations were not fully credible because they were inconsistent with the medical record and his daily activities.

Additionally, the law judge identified specific inconsistencies in the record that reflected negatively on the plaintiff's credibility (Tr. 21). Thus, the law judge pointed out that, contrary to the plaintiff's hearing testimony (Tr. 45, 46), the plaintiff had not regularly obtained Botox injections for his migraine headaches (Tr. 21; see Tr. 357). Specifically, after the plaintiff received Botox injections in May 2007 (at which time he was told to follow-up in three months (Tr. 249-50)), the plaintiff did not get Botox injections again until more than one year later, in October 2008 (Tr. 357). Therefore, in addition to concluding the plaintiff is not a reliable historian, the law judge could reasonably find that, if the plaintiff's migraines were as disabling as he asserts, the plaintiff would have been more conscientious about obtaining the Botox injections. Furthermore, the law judge noted that the plaintiff stated that a doctor had prescribed his walking cane (Tr. 150), but a medical record indicates that it was issued by a physical therapist upon the plaintiff's request (see Tr. 349). In sum, the law judge has provided ample reasons, supported by substantial evidence, for partially discounting the plaintiff's credibility.

The plaintiff argues that the law judge improperly considered his daily activities in determining his credibility (Doc. 16, pp. 8-9). However, a

plaintiff's daily activities are properly included in the evaluation of the credibility of his complaints.    20 C.F.R. 404.1529(c)(3)(i); <u>May</u> v. <u>Commissioner of Social Sec. Admin.</u>, 226 Fed. Appx. 955, 959 (11th Cir. 2007).    Furthermore, as indicated, the law judge did not discount the plaintiff's credibility solely on the basis of his daily activities; rather, the law judge considered that neither the objective medical records nor the plaintiff's daily activities were consistent with debilitating pain and impairments.

The plaintiff also argues, in a conclusory manner, that the "medical records show that [his] allegations of total disability are supported by treatment records, and/or [the plaintiff's] response to said treatment" (Doc. 16, p. 10).  The plaintiff fails to provide record citations which support this contention (<u>id.</u>) in contravention of the scheduling Order which, as indicated, specifically requires that each discrete issue "must be supported by citations to the record of the pertinent facts" (Doc. 13, p. 2). Furthermore, as the law judge thoroughly discussed, the medical records do not support the plaintiff's allegations of total disability.  In all events, it is not enough for the plaintiff to show that the records support his claim of disability; rather, he must demonstrate that the record compels such a finding.  <u>Adefemi</u> v. <u>Ashcroft</u>, <u>supra</u>.

Finally, the plaintiff argues that his persistent attempts to obtain relief of symptoms lends credibility to his allegations of disabling symptoms (Doc. 16, p. 9). As indicated, the law judge did not completely discount the plaintiff's allegations of pain and functional limitations. To the contrary, the law judge expressly stated that the plaintiff experienced some pain and limitation, and he therefore was limited to performing a restricted range of light work (Tr. 22). The plaintiff has not shown that his pursuit of treatment during the insured period (for which there are no records until March 2007, almost one year after the alleged onset date (see Tr. 243)), compelled the law judge to fully credit the plaintiff's allegations of disability. Rather, the plaintiff's continued treatment, which the plaintiff states has helped him (Tr. 37; see also Tr. 241, 243), undermines allegations of total disability.

In sum, the law judge's credibility determination is reasonable and supported by substantial evidence. Clearly, the evidence does not compel the contrary conclusion that the plaintiff's testimony was entirely credible.

D.   The plaintiff also contends that the law judge improperly discounted the disability determination of the U.S. Department of Veterans Affairs (VA) (Doc. 16, pp. 4-6; Doc. 18). In the decision, the law judge acknowledged that the VA assessed the plaintiff as having a 30% disability

-24-

rating for a depressive disorder and a 50% disability rating for migraine headaches, bad back and tinnitus (Tr. 21; see Tr. 241-42).

The disability decisions of the VA and other agencies are not binding on the law judge. 20 C.F.R. 404.1504. The court of appeals, however, has said that VA disability determinations must be given great weight. Rodriguez v. Schweiker, 640 F.2d 682, 686 (5th Cir. 1981). The Fifth Circuit explicated this principle in Chambliss v. Massanari, 269 F.3d 520, 522 (5th Cir. 2001):

> In *Rodriguez* and its progeny, we have sometimes referred to a VA disability determination as being entitled to "great weight." While this is true in most cases, the relative weight to be given this type of evidence will vary depending upon the factual circumstances of each case. Since the regulations for disability status differ between the SSA and the VA, ALJs need not give "great weight" to a VA disability determination if they adequately explain the valid reasons for not doing so.

See also Pearson v. Astrue, 271 Fed.Appx. 979 (11th Cir. 2008). In this case, the law judge considered the VA rating in his decision, but did not accept an 80% disability rating under Social Security standards.

Initially, the law judge noted, correctly, that the rating was not binding under Social Security law and that "[o]ther governmental agencies

apply different rules and standards in determining disability and inability to work" (Tr. 21). Significantly, the record in this case does not indicate any specific findings or explanation for the VA's assessment of almost total disability.

The law judge then explained that the 30% disability rating for a depressive disorder was inconsistent with the medical record which shows that, during the insured period, the plaintiff required no psychiatric hospitalizations, ongoing psychiatric treatment, or intervention (id.). Furthermore, the law judge gave a lengthy explanation why the plaintiff's psychological impairments were not severe, which was based primarily upon the statements of VA psychiatrist Dr. Bueno (Tr. 17-18). This explanation is sufficient to reject the VA 30% disability rating for depressive disorder (see Tr. 224, 241-42). See Kemp v. Astrue, 308 Fed.Appx. 423, 426 (11th Cir. 2009) (The ALJ gave specific reasons why the VA's 30% disability rating based on PTSD did not qualify the condition as a severe impairment under the SSA guidelines).

Furthermore, the law judge implicitly disagreed with the VA's assessment of a 50% disability rating for the plaintiff's tinnitus, migraine headaches, and back condition, since the law judge explained in the decision

that restrictions greater than those found in the residual functional capacity are unsupported by the record (see Tr. 19-20). Thus, as the law judge noted, there are no medical records from the insured period which address tinnitus (Tr. 16). Further, the law judge discussed in the decision that there is no objective evidence, or even a physician's opinion, which corroborates the presence of any other disabling impairments, singularly or in combination (id., Tr. 20-21). Therefore, the law judge fully justified the discounting of the VA ratings. See Chambliss v. Massanari, supra, 269 F.3d at 522 (the law judge need not give great weight to the VA rating if he adequately explains valid reasons for not doing so).[3]

The plaintiff argues, cryptically, that law judge erred in considering the reports of physicians who treated him for psychological impairments (Doc. 16, p. 5). However, the law judge's consideration of the plaintiff's psychological records was unquestionably appropriate, as 30% of the VA disability rating was premised on a depressive disorder.

---

[3]Therefore, this case is unlike Cronin v. Commissioner of Social Security, 2012 WL 3984703 (M.D. Fla. 2012), cited by plaintiff's counsel in a supplemental memorandum, because the law judge in Cronin dismissed in a conclusory manner the VA rating on the basis that the VA did not consider the entire record.

The plaintiff contends further that "much of the medical findings used to reject severity of impairments and disability was generated after the date last insured" (id.). Although the law judge did refer to medical findings after the insured period, the plaintiff has overstated the matter. Thus, the law judge referenced the sparse medical records from the insured period, and some records after the insured period (in order to determine whether any new impairments arose that could be reasonably tied to the period at issue) (Tr. 21). None of the records, whether from the insured period or after, contains medical evidence of disabling impairments. Thus, this is not a circumstance where the records show disability during the insured period which subsequently improved. Consequently, this argument is also meritless.

The plaintiff additionally asserts that the "evidence supporting the VA disability determination is contained in voluminous treatment records based on objective findings, reports and extensive testing" (Doc. 16, p. 5). The medical records cited by the plaintiff – which are not particularly voluminous – consist primarily of various diagnoses (including irrelevant dental problems) (see id., citing Tr. 184-88, 228, 231-52). However, it is well-established that the diagnosis of an impairment does not indicate its severity. Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988); Moore v.

Barnhart, 405 F.3d 1208, 1213 n. 6 (11th Cir. 2005). Thus, it is the functional limitations from an impairment that determine whether a claimant is disabled. See Wind v. Barnhart, 133 Fed. Appx. 684, 690 (11th Cir. 2005)(quoting McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986)("a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on h[is] ability to work.")). In this case, the plaintiff has not identified any medical records which show the effect of his impairments on his ability to work during the insured period. Therefore, the plaintiff's diagnoses did not compel the law judge to accept the VA's 80% disability rating.

In sum, the law judge could reasonably give little weight to the VA ratings in light of the absence of any explanation for the ratings, and the medical record which fails to support the presence of debilitating impairments. Therefore, the plaintiff's contention that the law judge erroneously discounted the VA's disability rating is unpersuasive.

It is, therefore, upon consideration

ORDERED:

That the decision of the Commissioner of Social Security is hereby AFFIRMED. The Clerk shall enter judgment in accordance with this Order and CLOSE this case.

DONE and ORDERED at Tampa, Florida, this _____ day of January, 2013.

THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE